## Barnett v. Howard et al.

(Decided Feb. 19, 1937.)

E. C. HYDEN for appellant.

H. L. SPENCER and ERVINE TURNER for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment for $6,000 against appellant, Dorcas Barnett, in favor of Eliza and L. D. Howard, appellees, as vendors of a certain parcel of land conveyed her for such recited consideration.

For a clearer understanding of the questions here presented, a brief preliminary statement of the antecedent steps and facts taken and disclosed in this protracted litigation appears needful.

This is the third appeal prosecuted in this case.

By a reference to the first appeal, styled Bank

of Commerce, etc., v. Howard et al., 257 Ky. 395, 78 S. W. (2d) 36, 37, it is disclosed that the appellee Howards had executed a large combined note to the Hargis Bank & Trust Company to secure the payment of which they mortgaged it their Breathitt county lands lying in some three or four tracts.

Upon a foreclosure suit brought by the Bank of Commerce upon their note, for the amount of some $12,000, the Howards answered, alleging that the note sued on had been procured from them by the fraud and deceit of the Hargis Bank & Trust Company, to which executed, and that the Bank of Commerce was not the real and beneficial owner of the note, but that the Hargis Bank & Trust Company was, and further charged that the note contained a large amount of usury, and should, together with the mortgage, be canceled. Upon submission the trial court so adjudged.

Upon the bank's appeal, this judgment was reversed, holding that the appellants were entitled (and should have been allowed) to raise the issue of usury against the Hargis Bank & Trust Company, as the real owner of the note, but that there was nothing in the record sustaining the judgment canceling the note and mortgage. The opinion concluded with the language that: "The court should have gone into the question of the extent of usury, if any, contained in the obligation, and have purged it of whatever that might be." In conformity with this direction, the note, upon the return of the case, was purged of usury and judgment thereupon given the bank for the amount of the debt found legally due, or, that is to say, for $6,398.98, and its lien of mortgage against the appellees' three tracts of land was ordered enforced by their sale or a sufficiency thereof to satisfy the judgment.

At the commissioner's sale of the land had thereunder, after selling two of the three tracts of land, the last tract, No. 3, called the "home place," was offered and bid in at $5,000 by the appellant, Dorcas Barnett, or for a sum largely in excess of the balance then remaining due on the judgment for which directed sold, after crediting it with the proceeds derived from the sale of the two other tracts, which were disposed of for some $3,375, and which two sales were duly reported and confirmed.

As high bidder for tract No. 3, appellant offered to execute bond to the commissioner for the remainder of the judgment debt, which the commissioner refused to accept in such amount, whereupon, complaining of the sale as irregular, in failing to sell the lands according to the directions of the judgment, or only a sufficiency of tract No. 3 thereof to satisfy the balance owing of the judgment debt, and in refusing to accept from her, as purchaser of tract No. 3, a bond offered in the amount of some $3,200 or sufficient to satisfy the unpaid remainder of the judgment, she filed exceptions to the sale of the tract, therein also further setting out her ownership of the tract, subject to the bank's mortgage, alleging that in January, 1931, the appellees, Eliza and L. D. Howard, her parents, had by their general warranty deed sold and conveyed to her this tract No. 3, subject to the plaintiff bank's mortgage. Further, it appears from the record that, in addition to so pleading her purchase of the land from her parents, she had tendered in the action, upon its second hearing in the Breathitt circuit court, her petition to be made a party, also a counter-claim and cross-petition, in which she alleged substantially what was later included in her exceptions.

Objections were made to the filing of this pleading by appellant, and also a demurrer filed to her exceptions to the sale, both of which were sustained.

Complaining of such ruling upon her exceptions to the sale, a second appeal was prosecuted, styled Barnett v. Bank of Commerce, et al., 264 Ky. 179, 94 S. W. (2d) 334, wherein it was held that the judgment of the lower court, overruling her exceptions, was in error and reversed it, with directions to permit her to execute, as proffered, a bond for the unpaid remainder of the judgment debt, with the further provision that upon her failure to do so the court should direct a resale of such tract.

Upon a remand of the case, the defendants therein, here the appellees, tendered and were allowed to file, over the exceptions thereto of appellant, their amended separate answer, counterclaim, and cross-petition against the appellant, upon which summons was served, wherein they sought to recover damages for her alleged violation of the contract entered into be-

tween them and the appellant in January, 1931, providing as follows:

"This contract made and entered into this 26th day of January, 1931, by and between Dorcas Barnett, party of the first part, and Eliza Howard, party of the second part,

"Witnesseth: that whereas second party has this day sold and conveyed to first party a certain tract of land lying and being on Quicksand Creek, known as the home place and being a part of the same land now embraced in an action in the Breathitt circuit court wherein Bank of Commerce is plaintiff and Eliza Howard, etc. are defendants, Now in consideration of said conveyance the said Dorcas Barnett agrees to pay all costs and expenses of said action, including attorney fees and to pay or satisfy $6,000.00 of said mortgage, less said expenses and costs, and further agrees that second party may have the rentals from the oil lease on said land, so long as they live provided such rentals are paid.

"In testimony whereof witness our signatures the day and date aforesaid."

This contract was duly acknowledged and put to record.

Further, the cross-petition alleged that the appellees had grown old and wished to salvage of their lands, all in lien for their indebtedness to the bank, a part thereof for a home, and to carry out such purpose, during the pendency of the bank's suit to foreclose its mortgage upon all the land, they had in January, 1931, sold and conveyed to their daughter, the appellant, tract No. 3 of their land, called the "home place," for an agreed cash consideration of $6,000; that the deed executed did not recite the consideration to be paid, but the writen contract, as set out supra, executed simultaneously with the deed, did.

Further, the pleading recited that appellant has since had the use and possession of this "home place" conveyed her, but had failed to pay them the agreed $6,000 purchase price, nor had they ever been paid any part of it.

Wherefore, they prayed judgment against appel-

lant for the sum of $6,000, with interest and costs, and that they be adjudged a prior and superior lien upon the land sold and conveyed her, and that the same be ordered sold to satisfy their judgment, interest, and costs against appellant.

To this pleading appellant demurred and also filed a motion to strike, upon the grounds that the cause of action attempted to be set up by appellees' counterclaim and cross-petition was not germane to the subject matter of the petition, nor was it a proper counterclaim as defined by section 96, subsection 1, Civil Code of Practice, nor satisfied the requirements of section 111, Civil Code of Practice, nor here allowable as a cross-petition.

Further, appellant, without waiving her demurrer or motion to strike the cross-petition, filed answer and counterclaim thereto, making up the issues, and by which she pleaded that, long before the filing of the bank's suit against the Howards, they had abandoned their land, mortgaged it, and moved to Jackson, admitting their inability to defend its suit or to show the usury and unauthorized sums contained in the debt for which the bank was suing them; that their mortgage debt, for which the bank sued, was then claimed by it to amount to around $12,000; and that, under such circumstances, the appellees were willing, and did by their contract agree, to allow her to resist and defend the bank's suit, to the end of reducing its debt to such an amount as was legally owing it by them, at her own expense, with the understanding that, if she could thereby reduce or satisfy the debt by as much as $6,000 or reduce the debt to an amount where the remainder of the mortgaged land was sufficient to pay its debt, in consideration of such service, she might keep the home place. Further, appellant pleaded that, since she had performed these conditions named as the consideration for the land and had been successful in her defense of the bank's suit, by reducing or "satisfying" its debt by approximately $6,000, or to an amount adjudged legally owing it of some $6,300, the appellees had changed their minds and refused to carry out their agreement, and are now by their cross-petition, in violation of the terms of their contract, seeking sale of the place for her alleged failure to pay for it

and for an accounting for her use of the place while in her possession under their deed or to recover of her again the purchase price stated in the contract, by which she agreed "to pay *or satisfy $6,000* of said mortgage, less her expenses and costs in defending the bank's suit." (Italics ours.)

Answering this pleading of appellant, the defendants filed pleading traversing its allegations.

Such pleadings forming the issues and proof being taken thereon, upon final submission of the cause judgment was rendered against appellant for the entire amount of the purchase price of $6,000, with interest and costs as sued for.

Appellant assailing the propriety of this judgment, her appeal is before us.

Appellant's main objection urged for reversal of the judgment is that the court erred in overruling her demurrer and also her motion to strike the appellees' counterclaim and cross-petition filed against her, upon the ground that such cross-action is attempted to be prosecuted for an alleged violation of a separate and distinct contract entered into between the appellant and the appellee Howards long after the latters' execution of their note and mortgage upon their lands to the Hargis Bank, upon which the original action was here brought, or, that is to say, the cause of action here sought to be prosecuted by cross-petition against appellant does not affect, nor is affected by, the original cause of action.

In considering this objection, it may be noted that a counterclaim is defined by section 96, subsection 1, Civil Code of Practice, as "a cause of action in favor of a defendant against a plaintiff, or against him and another, which arises out of the contract, or transactions, stated in the petition as the foundation of the plaintiff's claim, or which is connected with the subject of the action." Also, subsection 3 of said section defines a cross-petition as "the commencement of an action by a defendant against a co-defendant, or a person who is not a party to the action, or against both; * * * and is not allowed to a defendant, except upon a cause of action which affects, or is affected by, the original cause of action."

The cause of action attempted to be set up in appellees' amended answer, by way of counterclaim and cross-petition, was that they had sold and conveyed a part of the land embraced in the plaintiff's bank's mortgage to their daughter, the appellant, Dorcas Barnett, in January, 1931, for $6,000, and that she had failed to pay the same or any part of same; that, by reason of such sale and conveyance to her, they had a vendors' lien against the land so conveyed her, which was second only to the plaintiff's mortgage lien against it, and they asked that she be made a party to the suit, to the end that their rights as such lienholders against the land might be adjudicated in the same action in which the plaintiff bank was seeking to enforce its rights as a lienholder against it.

It is evident that appellees' cause of action, thus asserted by their cross-petition, sought the enforcement of their lien rights against the same land or subject matter involved in the original cause of action, brought against appellees by the bank for the enforcement of its mortgage lien against it. Such being the case, the cross-action, it would appear, did affect or was affected by the original cause of action. The fact that appellees' vendors' lien claim, here sought to be enforced by their cross-action, arose long after the occurrence of the loan transaction and mortgage, under which the original debt sued for was created and secured, does not prevent appellees' junior vendors' lien affecting or being affected by the attempted enforcement by foreclosure of plaintiff's lien against the same land for which the original action was brought.

Section 692, Civil Code of Practice, provides that:

"The plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist."

Also, section 694, subsection 3, Civil Code of Practice, provides that:

"The plaintiff in an action to enforce a lien on real property shall state in his petition the liens, if any, which are held thereon by others, and

make the holders defendants; and no sale of the property shall be ordered by the court prejudicial to the rights of the holders of any of the liens."

To such effect, in the case of Fitzpatrick et al. v. Costigan et al., 230 Ky. 365, 19 S. W. (2d) 983, it was held that where lienholders, named as defendants with owners of land in action by other lienholders to enforce liens, filed their answers, asserted their liens, and prayed that their answers be made cross-petitions against owners of land, they thereby assumed role of plaintiffs, and were as fully authorized to carry on the action to conclusion, after original plaintiffs abandoned it, as if they had been original plaintiffs.

The appellant cites and relies upon the case of Black Motor Co. v. Call, 264 Ky. 40, 94 S. W. (2d) 35, as supporting her contention that the court here committed reversible error in permitting the cross-petition to be filed, upon the grounds that the cross-action was alien to, as not affecting or affected by it, the cause of action set up in the original suit. A casual examination of the facts of that case, however, clearly shows it is easily distinguishable from the instant one.

. In that case, it appears that Call bought an automobile from the Black Motor Company, for which he had executed his notes, which were assigned by seller to the General Motors Acceptance Corporation in financing the transaction. Later, the motors corporation sued on the notes, when Call attempted to defend by asserting a claim for damages for the alleged violation of the terms of the contract had with seller to furnish him a car free from defects. There it was adjudged that such defense attempted to be asserted by a cross-action could not be interposed in the action brought by a holder for value of the notes for their collection.

To like effect was it so held and the rule announced in the case of Wahl v. Lockwood & Gasser, 227 Ky. 183, 12 S. W. (2d) 321.

Under repeated decisions of this court, it is held that such claims as were presented in the Call and the Wahl Cases, supra, could not be presented by a counterclaim and cross-petition in the main action and that demurrers or motions to strike should have been sustained and that the counterclaims and cross-petitions

attempted to be presented therein should be dismissed, for the reason, among others, that in such cases the one bringing an original cause of action unaffected by such cross-action should not have his action encumbered with the determination of controversies alien to the original cause of action, and thus improperly attempted to be tried out therein. See Collins v. Outram, 236 Ky. 106, 32 S. W. (2d) 722, 723, where we said:

"The effort to make a cross-petition and counterclaim of his answer in order to secure a settlement of the partnership presents matters which are not germane to the subject-matter of the petition. Subsection 3 of section 96 of the Civil Code of Practice prohibits the allowance of a cross-petition except upon a cause of action which affects or is affected by the original cause. The plaintiff only sought to recover of the defendant that which he was bound to pay under the trust agreement, and the dissolution of the partnership now could not affect the plaintiff's right with respect to those assessments. Of course, he may by an independent action present the question as to his right to have such relief, but he may not, under the Code provision (section 96), maintain a cross-action against the plaintiff alone or jointly with third persons. * * * It was not necessary to complete adjudication of the matter in issue that the other associates should be made parties."

In the instant case, the cross-petition, seeking to present and have tried appellees' vendors' lien (and right therein to its enforcement) against the same property against which the original action was brought to enforce a mortgage lien, did here, however, unlike the situation in the Outram Case, supra, present a case where it was required for a complete adjudication of the matter of the enforcement of all liens against this same property that all lienholders against it should be made parties.

Further, in the case of Dugan v. Logan et al., 229 Ky. 5, 16 S. W. (2d) 763, 764, it was held, in an action brought to quiet title to mineral rights in certain lands, in which defendant filed cross-petition, involving entirely separate and distinct lands from those mentioned in the original petition and not affecting the subject

matter of the litigation, that the court did not abuse its discretion in dismissing the cross-petition, the opinion reciting the rule as to this to be as follows:

"Whether or not a cross-petition shall be prosecuted in an action is a matter of discretion in the circuit judge."

Here the trial court in the exercise of its discretion allowed appellees' cross-petition, asserting their vendors' lien against the same land involved in the original action, to be filed, heard proof thereon, and upon final submission of the cause adjudged that the appellees recover against appellant, upon their cross-petition, the full amount of $6,000, the purchase price of the land sold her, and that, to secure the payment of same, they had a lien on the land second only to the senior mortgage lien of plaintiff thereon and that said land should be sold, and from the sale proceeds the commissioner would first pay the balance owing upon the senior mortgage lien of the Hargis Bank & Trust Company and then pay appellees the balance of said proceeds, or, so far as required for the satisfaction of their judgment, when credited by the amount paid in satisfaction of the bank's mortgage lien.

Appellant contends that this judgment is altogether erroneous, from whatever view considered, and argues that it is based upon a misconstruction of appellees' contract, which she contends is not an unequivocable obligation to pay money; but that, under its terms, appellant had the right under the contract to either pay $6,000 less the cost of defending the bank's action, or to "satisfy $6,000.00 of said mortgage" by reducing the mortgage debt sued on by that amount less cost of defense; that the prime purpose of the parties, motivating them in entering into the contract, was the reduction of the debt sued on, which appellant contends she did reduce by such $6,000 or more; and that, in so doing, she fully performed her contract.

Appellees, however, contend that such was not the intent and meaning of the contract, but that its purpose was that appellant should pay $6,000 for the land, whether in cash to them as its vendors or by payment of such an amount on the debt to the bank mortgagee, less expenses and costs.

The court interpreted the appellant's views as to the provisions and meaning of the contract as fanciful and strained, in that, in the light of the circumstances under which the contract was made, it could not, if so construed, have resulted in any benefit to the appellees in the saving of their property, or, that is to say, that appellant, by paying such amount to the bank as would so reduce their debt that their remaining lands in mortgage to it might sell for an amount sufficient to satisfy such balance, would get tract No. 3, since in that event it would alike result that appellees would lose all of their lands and home. The more reasonable construction of the contract was evidently found by the court to be that the bank's debt, when purged to an amount legally owing upon the debt, would be more than paid out of the $6,000 which appellant was to pay for the land, and that, by such an arrangement, they would be able to salvage the remainder of their lands.

We are of the opinion, when considering the language of this contract of sale here involved and the circumstances under which the parties employed this language in it, that the chancellor's interpretation of it was correct, and which conclusion is fortified by the fact that simultaneously with the execution of the contract did appellees also execute their deed to appellant for the land, reciting the consideration therefor as then received rather than as consisting of services later or thereafter to be rendered by her in reducing the debt in the amount there named.

Therefore, for the reasons indicated, the judgment of the chancellor being in accord with our views as above expressed, his judgment should be, and it is, affirmed.